U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 JUL -2 PM 3:40

CLERK

BY _____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. 2:25-cr-00013-1 |
| ) | |
| FLOYD ARTIS, ) | |
| Defendant. ) | |

## ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE
(Doc. 19)

The government charges Defendant Floyd Artis ("Artis" or "Defendant") with knowingly possessing cocaine base and fentanyl with the intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and unlawful possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The charges arise from an incident on January 15, 2025 when the motor vehicle in which Defendant was a passenger fled a stop being conducted by law enforcement and crashed into a tree.

On April 9, 2025, Defendant filed a Motion to Suppress asking the court to suppress any and all evidence seized from Defendant's person following the motor vehicle accident as well as any and all evidence obtained during a subsequent search of the vehicle. In its response to the motion, the government stated it did not intend "to offer evidence seized from Artis's person in its case-in-chief." (Doc. 20 at 1.) The government opposed the motion as to the evidence located during the search of the vehicle on several grounds, including that Defendant does not have standing to challenge the search of the vehicle.

Evidentiary hearings were held on May 19, 2025 and June 12, 2025. The government is represented by Assistant United States Attorney Paul Van de Graaf. Defendant represents himself. Chandler W. Matson, Esq. has been assigned as standby counsel for Defendant.

I. **Findings of Fact.**

Based on the testimony and exhibits admitted at the hearing, the court finds as follows:*

On January 15, 2025 at approximately 9:00 p.m., Rutland City Police Detective Corporal Adam J. Lucia was participating in a drug interdiction detail. This assignment involves surveilling vehicular traffic and residences suspected to be involved in drug activity. During his surveillance, a black-colored 2022 Nissan Sentra came to Detective Lucia's attention when it was traveling at a higher speed than normal in the area of Howe Street and Pine Street. Detective Lucia followed the vehicle to the Rutland Shopping Plaza where it parked near Wal-Mart. Another officer who was with Detective Lucia told him there was a female in the driver's seat and a male in the passenger seat.

Detective Lucia followed the vehicle. The vehicle made a number of turns onto different streets. During one of the turns, the vehicle failed to use its turn signal. It also abruptly turned into the Social Security Office on Forest Street and then headed back in the same direction from where it came. Detective Lucia believed these tactics were being used to determine whether anyone was following the vehicle.

Another law enforcement officer involved in the surveillance detail saw the vehicle make a lane change without using its turn signal while it was traveling south on South Main Street. That officer initiated a motor vehicle stop. The vehicle stopped on Chaplin Avenue, and Detective Lucia continued driving south on South Main Street. Detective Lucia heard radio communication indicating the vehicle had driven away from the stop.

---

* Despite contrary representations in its responsive pleading, the government indicated at the beginning of the May 19, 2025 hearing that it intended to introduce some of the evidence seized from Defendant's person. As a result, the government presented evidence, including witness testimony. At the beginning of the June 12, 2025 hearing, the government returned to its original position that it was not going to introduce any evidence seized from Defendant's person in its case-in-chief. This concession rendered much, if not all, of the testimony unnecessary. The findings of fact included herein are limited and are intended to provide context for the motion.

2

Detective Lucia headed to Chaplin Avenue, which is a dead-end street. He observed a vehicle that had left the road and crashed into what appeared to be trees and bushes. It was a chaotic scene with people screaming. Detective Lucia approached the vehicle. Other officers were present and initiating orders to the occupants of the vehicle, shouting at them to show their hands. Detective Lucia first approached the driver's side of the vehicle and then approached the passenger side. Law enforcement opened the front passenger door. Detective Lucia was able to drag Defendant out of and away from the car. Once away from the vehicle, Detective Lucia placed handcuffs on Defendant, as they were detaining him. Detective Lucia indicated at this point that they were investigating why the vehicle fled the traffic stop.

Another officer conducted a pat-down search of Defendant and indicated there were no weapons. Detective Lucia did not hear this. Detective Lucia moved Defendant farther away from the crashed vehicle. Once there, Detective Lucia then conducted a pat-down search of Defendant, looking for weapons or contraband. During the search, Detective Lucia located a hard object in Defendant's right front pocket, which he believed to be drugs. Upon finding the suspected drugs, Detective Lucia arrested Defendant. Defendant was later searched incident to arrest, and money was discovered on his person.

The two other occupants of the vehicle were taken to Rutland Regional Medical Center for treatment. While there, one was found to have approximately 2.4 grams of cocaine or cocaine base hidden in her body.

The police seized the vehicle and brought it to the Rutland Fire Department. Detective Lucia drafted a search warrant application. The application included details about the surveillance, the initial traffic stop, the motor vehicle crash, the drugs and money found on Defendant, and the

drugs found on the other occupant. The search warrant was granted on January 17, 2025. A search of the vehicle revealed drugs, a Starlet .25 automatic handgun, and a black Apple iPhone.

## II. Conclusions of Law.

### A. Evidence Seized from Defendant's Person Is Moot.

Defendant first seeks to suppress all evidence seized from his person following the motor vehicle crash on January 15, 2025. The government has responded that, because it "does not plan to offer evidence seized from Artis's person in its case-in-chief, the Court may deny the motion as to that evidence as moot." (Doc. 20 at 1.) Despite contrary statements at the first hearing, the government confirmed it would not offer evidence seized from Artis's person in its case-in-chief during the hearing held on June 12, 2025.

District Courts within the Second Circuit have held this type of assurance by the government is sufficient to render the pertinent dispute as moot. *See United States v. White*, 489 F. Supp. 3d 274, 277 (S.D.N.Y. 2020); *United States v. Jackson*, 548 F. Supp. 2d 24, 26 (W.D.N.Y. 2008). Given the government's position that it will not offer evidence seized from Artis's person in its case-in-chief, the court finds Defendant's motion pertaining to evidence seized from his person moot. This evidence will not be admissible in the government's case-in-chief.

### B. Defendant Lacks the Legitimate Expectation of Privacy Needed to Challenge the Search of the Vehicle.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV; *accord Maryland v. Pringle*, 540 U.S. 366, 369 (2003). "[T]he Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). Fourth Amendment rights are personal in nature, and a defendant must assert that his own legal rights and interests were violated rather than "basing his

4

claim for relief upon the rights of third parties." *Rakas v. Illinois*, 439 U.S. 128, 139 (1978). "[I]t is a person's legitimate expectation of privacy in the space invaded that is critical." *United States v. Paulino*, 850 F.2d 93, 96 (2d. Cir. 1988). The appropriate inquiry, therefore, is "whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Rakas*, 439 U.S. at 140. The burden is on the defendant to establish that his own rights were violated by the search. *Paulino*, 850 F.2d at 96 (citations omitted).

To establish that his own rights were violated, Defendant must demonstrate a legitimate expectation of privacy in the place or thing searched. *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987). "One who owns and possesses a car . . . almost always has a reasonable expectation of privacy in it." *Byrd v. United States*, 584 U.S. 395, 404 (2018). It is more difficult, however, to "define and delineate . . . the legitimate expectations of privacy of others" in the vehicle. *Id*. To assess whether an individual has a reasonable expectation of privacy in a place or thing to be searched, the Supreme Court instructs, "[o]ne of the main rights attaching to property is the right to exclude others," and that "one who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of the right to exclude." *Id*. at 405 (citation omitted).

The United States Supreme Court has long held that non-owner passengers of a vehicle, who do not otherwise demonstrate a possessory or property interest in the vehicle, lack the necessary expectation of privacy to challenge a search. *Rakas*, 439 U.S. at 148. In *Rakas*, defendants, who were charged with armed robbery, challenged the introduction into evidence of a weapon and ammunition located by police in a vehicle in which defendants were non-owner passengers. The United States Supreme Court held that this challenge must fail.

> [Defendants] asserted neither a property nor a possessory interest in the automobile, nor an interest in the property seized. And as we have previously indicated, the fact

5

they were "legitimately on [the] premises" in the sense that they were in the car with the permission of its owner is not determinative of whether they had a legitimate expectation of privacy in the particular areas of the automobile searched.

*Id.* (alteration in original). The Court continued that defendants "made no showing that they had any legitimate expectation of privacy in the glove compartment or area under the seat of the car in which they were merely passengers. Like the trunk of an automobile, these are areas in which a passenger [acting only as] a passenger simply would not normally have a legitimate expectation of privacy." *Id.* at 148-49.

In considering whether the passenger in a vehicle has a legitimate expectation of privacy to raise a Fourth Amendment challenge to a search of the vehicle, the Second Circuit has focused on whether the passenger had the right to exclude others from the vehicle. *See Paulino*, 850 F.2d at 97 (noting passenger who has no ownership interest in car and no right to exclude others from car lacked legitimate expectation of privacy); *United States v. Smith*, 621 F.2d 483, 487 (2d Cir. 1980) (finding neither defendant had privacy interest because both denied ownership in property seized from vehicle or vehicle itself). Where a passenger does have the right to exclude others from the vehicle, the passenger has the legitimate expectation of privacy to challenge a search of the vehicle. *See United States v. Santiago*, 950 F. Supp. 590, 598 (S.D.N.Y. 1996) (finding taxicab passenger had legitimate expectation of privacy in passenger area of cab because passenger hired cab for exclusive use during trip.) Similarly, when a passenger asserts an ownership interest in an item in the vehicle that was searched, they have been found to possess a legitimate expectation of privacy in the item seized. *See United States v. Perea*, 986 F.2d 633, 639, 642 (2d Cir. 1993) (taxi passenger had reasonable expectation of privacy in duffle bag located in trunk, despite lacking reasonable expectation of privacy in trunk itself.)

Here, there is no evidence to support a finding that Defendant owned the vehicle. There is no evidence that he was driving the vehicle. There is no evidence that he had the ability to exclude others from the vehicle. There is no evidence to suggest that he exercised "joint control" or "common authority" over the vehicle. *See United States v. Thomas*, 447 F.3d 1191, 1198 (9th Cir. 2006). The only evidence before the court is that he was lawfully in the vehicle as a passenger. Simply being lawfully present in the vehicle, without more, is not sufficient to establish a reasonable expectation of privacy. *See id.*; *Rakas*, 439 U.S. at 148; *Paulino*, 850 F.2d at 97. In sum, the court cannot conclude that Defendant had a reasonable expectation of privacy to challenge the search of the vehicle.

## ORDER

The court DENIES Defendant's Motion to Suppress Evidence found on his person as MOOT. The court DENIES Defendant's Motion to Suppress Evidence found during the search of the motor vehicle. (Doc. 19.)

DATED at Rutland, Vermont, this 2nd day of July 2025.

Mary Kay Lanthier
United States District Court Judge